879 P.2d 528

**Richard I. DAN, Petitioner–Appellant,**

v.

**STATE of Hawai'i, Defendant–Appellee.**

**No. 16345.**

Supreme Court of Hawai'i.

Aug. 29, 1994.

Richard I. Dan, petitioner–appellant pro se.

Mark R. Simonds, Deputy Prosecuting Atty., County of Maui, on the briefs, Wailuku, for respondent-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Petitioner-appellant Richard I. Dan appeals from the Second Circuit Court's orders denying his Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition and request for court-appointed counsel. Dan was previously convicted of assault in the third degree, a misdemeanor, in violation of Hawai'i Revised Statutes (HRS) § 707–712(1)(a) (1985),[1] which conviction was summarily affirmed by this court in *State v. Dan*, No. 15050 (Haw. Dec. 18, 1991) (mem.).

On appeal, Dan essentially argues that: (1) he was denied effective assistance of trial and appellate counsel; and (2) because he was acting *pro se* in his Rule 40 petition, he was entitled to court-appointed counsel. We affirm.

## I. BACKGROUND

On June 26, 1990, Dan was charged by complaint with assault in the third degree. Although some of the facts are in dispute, the undisputed facts are as follows: On August 14, 1989, Dan's wife, Josephine Dan (Mrs. Dan),[2] along with her two sons, Aaron and Frank, ages three and six, respectively, Mrs. Dan's best friend, Robin May (Robin), Robin's husband, Mark May (Mark), and Mrs. Dan's alleged lover, Richard Villareal, had driven to a clinic in Kahului, Maui in the Mays' vehicle, seeking treatment for Aaron who was suffering from what was believed to be an ear infection. While parked in the clinic's parking lot, Dan drove up in his car, got out, and approached the Mays' vehicle. Dan grabbed his son, Frank, who was already out of the Mays' vehicle, and started to proceed back to his own car.

In an effort to prevent Dan from placing Frank in Dan's car and driving off, Robin placed herself in front of Dan's vehicle. Dan, however, pushed Robin aside, placed Frank in the passenger seat and got into the vehicle. Robin immediately climbed into the car on top of Dan's lap, pulled the keys out of the ignition, and tossed the keys into the parking lot.

Mark picked up Dan's keys and, without Dan noticing, returned the keys to Robin while she was still sitting on top of Dan. Believing that Mark had the keys, Dan forced his way out of his vehicle, approached Mark, and demanded that Mark return his car keys. Mark told Dan that he did not have the keys and proceeded to walk away.

The remaining facts are disputed. At trial, Robin and Mark testified that throughout the commotion between Robin and Dan in Dan's car, Dan continued to hold onto Frank with his left hand, reaching across his (Dan's) body to do so. Dan, however, testified that he held onto Frank with his right hand. He explained that his left arm is impaired due to an injury to his left elbow in 1971; therefore, he would not have been able to hold onto Frank with his left arm.

In reference to the events that transpired after Dan forced his way out of the vehicle, Robin and Mark testified that when Mark turned to walk away from Dan, Dan lunged at Mark; Mark turned and ran. Dan caught up with Mark, grabbed him, and either threw or shoved Mark to the ground. Dan then kicked Mark twice on the inside of his upper thigh. Photographs of the bruises to Mark's thigh, which were taken by Robin, were shown at trial and admitted into evidence. Dan, however, testified that it was Mark who

---

1. HRS § 707–712 provides in pertinent part:

 **Assault in the third degree.** (1) A person commits the offense of assault in the third degree if he:

 (a) Intentionally, knowingly, or recklessly causes bodily injury to another person[.]

2. At the time of the incident, Dan and his wife were estranged, but still legally married.

assaulted him in the parking lot, punching him through the open car window as he held onto Frank. Dan denied chasing Mark, pushing him to the ground, or kicking Mark in the thigh. In fact, Dan claims that while outside the vehicle, Mark tried to kick him, and that he grabbed Mark's foot by the ankle and threw him in the air.

On October 24, 1990, the jury found Dan guilty as charged. He was subsequently sentenced to (1) six months incarceration, suspended on the condition that he abide by the terms of his probation, and (2) perform 150 hours of community service. He was also ordered to pay a fine of $1,000.00. As previously noted, we affirmed Dan's conviction in December 1991.

On April 3, 1992, Dan, acting *pro se*, filed a HRPP 40 petition to vacate, set aside or correct the judgment. In his petition, Dan essentially alleged that he was denied effective assistance of trial and appellate counsel. Although inartfully worded, we glean the following claims of ineffective assistance of trial counsel from Dan's petition:[3]

(1) Counsel's failure to discover or move to exclude from evidence photographs of Mark's bruises, which Dan claims the prosecution failed to disclose prior to trial;[4]

(2) Counsel's failure to develop evidence of the physical impairment of Dan's left arm;

(3) Counsel's failure to develop the Mays' bias in favor of Mrs. Dan;

(4) Counsel's failure to take any action regarding new evidence that became available one week after the trial (the newly discovered evidence was purportedly Frank's observation that Mark punched Dan through the car window on the day of the incident);

(5) Counsel's unavailability for consultation with Dan during the weeks immediately preceding trial; and

(6) Counsel's intoxication before, during, and after trial.

With respect to appellate counsel, Dan claims that he was denied effective assistance of appellate counsel because of counsel's failure to file a motion for reconsideration of this court's memorandum opinion affirming his conviction.

The State filed its answer to Dan's petition on May 1, 1992. Sometime between May 1, 1992 and June 9, 1992, the court orally ruled on Dan's petition. On June 9, 1992, the deputy prosecuting attorney provided Dan with a copy of the proposed findings of fact and conclusions of law that were transmitted to the court. As previously noted, on June 17, 1992, Dan filed his request for court-appointed counsel to assist with his Rule 40 petition and attached his response to the proposed findings of fact and conclusions of law.

On June 30, 1992, the court entered its findings of facts, conclusions of law, and order, denying Dan's Rule 40 petition without evidentiary hearing. On the same date, the court also denied Dan's petition for court-appointed counsel; this timely appeal followed.

---

**3.** We note that on June 17, 1992, Dan filed a request for court-appointed counsel to assist him on his Rule 40 petition. Attached to this request is another document entitled, "Petitioner's Response to Findings of Fact, Conclusions of Law, and Order" (Response), which Dan refers to as the "supplement" to his Rule 40 petition in his opening and reply briefs. To more fully understand the nature of Dan's claims of ineffective assistance of counsel, the information contained in the Response have been incorporated into the description of alleged deficiencies.

**4.** We note that the petition submitted by Dan is a pre-printed form, wherein a petitioner, like Dan, seeking to vacate, set aside, or correct a judgment, merely fills in the blanks provided. To assist the petitioner, the pre-printed form also includes a listing of possible grounds for relief from (a) through (j). In his petition, Dan mistakenly listed as a ground for relief "(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant." In the space provided for "supporting facts" of the aforementioned ground, Dan stated, "Prosecution had surprise evidence and never gave us the opportunity to inspect this evidence. See attached Memorandum." The attached memorandum, however, makes no mention of the basis for this claim. In his Response, Dan acknowledges his mistaken reference to subsection (f) and clarifies his claim as iterated above.

## II. *STANDARD OF REVIEW*

 In *State v. Allen,* 7 Haw.App. 89, 744 P.2d 789 (1987), the question before the Intermediate Court of Appeals (ICA) was whether the trial court erred in denying a Rule 40 petition without a hearing. The ICA held that "a [Rule 40] petition for post-conviction relief is addressed to the sound discretion of the court, and absent an affirmative showing of abuse[,] the lower court's denial of such a petition will not be overturned on appeal." *Id.* at 92, 744 P.2d at 792 (citing *State v. Schrock,* 149 Ariz. 433, 441, 719 P.2d 1049, 1057 (1986)). Although we disagree with the ICA's holding, and to that extent overrule *Allen,* we adopt the ICA's following analysis of the standard of review, which we conclude to be *de novo:*

> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing. *The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.*

*Allen,* 7 Haw.App. at 92–93, 744 P.2d at 792–93 (emphasis added).

 As the ICA's analysis indicates, the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue. Because the appellate court's determination of "whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court" is a question of law, the trial court's decision is reviewed *de novo.* *See United States v. Burrows,* 872 F.2d 915 (9th Cir.1989) (denial of a post-conviction motion based on ineffective assistance of counsel without conducting an evidentiary hearing is reviewed *de novo* for a determination of whether the files and records of the case conclusively show that petitioner is entitled to no relief). Therefore, we hold that, on appeal, the issue whether the trial court erred in denying a Rule 40 petition without a hearing based on no showing of a colorable claim is reviewed *de novo;* thus, the right/wrong standard of review is applicable.

 In assessing claims of ineffective assistance of counsel, the applicable standard is whether, "viewed as a whole, the assistance provided [was] 'within the range of competence demanded of attorneys in criminal cases.'" *State v. Antone,* 62 Haw. 346, 348, 615 P.2d 101, 104 (1980) (citation omitted).

> General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry. Specific actions or omissions alleged to be error but which had an obvious tactical basis for *benefitting* the defendant's case will not be subject to further scrutiny. If, however, the action or omission had no obvious basis for benefitting the defendant's case *and* it "resulted in the withdrawal or substantial impairment of a potentially meritorious defense," then [it] ... will be evaluated as ... information that ... an ordinary competent criminal attorney should have had.

*Briones v. State,* 74 Haw. 442, 462–63, 848 P.2d 966, 976 (1993) (emphasis in original) (internal citations omitted). The burden of establishing ineffective assistance rests with the petitioner and can only be met by demonstrating specific errors or omissions resulted in the withdrawal or substantial impairment of a meritorious defense. *State v. Smith,* 68 Haw. 304, 309, 712 P.2d 496, 500 (1986).

"Determining whether a defense is 'potentially meritorious' requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker.... Accordingly, no showing of 'actual' prejudice is required to prove ineffective assistance of counsel." *Briones,* 74 Haw. at 464, 848 P.2d at 977 (citing *State v. Aplaca,* 74 Haw. 54, 73, 837 P.2d 1298, 1308 (1992)).

## III. *DISCUSSION*

On appeal, Dan appears to challenge certain of the court's findings of fact (FOF) and conclusions of law (COL). However, Dan does not specifically quote each FOF and COL to which he takes exception, as required by Hawai'i Rules of Appellate Procedure (HRAP) 28(b)(4)(C),[5] although he does specifically refer to most of the challenged conclusions. Nevertheless, we are able to glean from Dan's brief in its entirety the specific FOF and/or COL he apparently challenges in this appeal. In the interest of justice and fairness, we will address the FOF and/or COL pertinent to the arguments raised by Dan.

■ A trial court's FOF are reviewed under the "clearly erroneous" standard. *Hawai'i Thousand Friends v. City and County of Honolulu*, 75 Haw. 237, 248, 858 P.2d 726, 732 (1993) (citation omitted). " 'A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed.' " *Id.* (citation omitted) (internal brackets omitted). " 'An appellate court may freely review conclusions of law and the applicable standard of review is the right/wrong test.' " *Maria v. Freitas*, 73 Haw. 266, 270, 832 P.2d 259, 262 (1992) (citation omitted); *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 119, 839 P.2d 10, 28 (1992), *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). "A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." *Amfac*, 74 Haw. at 119, 839 P.2d at 29 (citation omitted); *Maria*, 73 Haw. at 271, 832 P.2d at 263 (citation omitted).

We address each of Dan's arguments with respect to the alleged ineffective assistance of trial counsel, appellate counsel, and finally, the denial of his request for court-appointed counsel.

### A. *Ineffective Assistance of Trial Counsel*

### 1. **Failure to Disclose Photographs**

■ FOF 5 states: "The first ground for relief urged in the instant petition alleges the State's failure to disclose evidence favorable to the defense at trial, but nowhere in the petition or supporting affidavits is there any description of the allegedly favorable evidence[.]" The circuit court concluded: "Petitioner's first ground for relief fails to factually present a colorable claim upon which relief may be granted, due to the failure to allege the favorable evidence purportedly withheld. No hearing is therefor[e] available on this ground." COL 5 (citations omitted).

We have previously noted that the evidence referred to here are the photographs of Mark's bruises and that Dan acknowledges he mistakenly listed subsection (f), "failure of the prosecution to disclose ... evidence favorable to the defendant." He argues, however, that trial counsel's failure to object to the admission of the photographs into evidence based on the prosecution's non-disclosure, despite a defense request for discovery, constitutes either ineffective assistance or plain error. Because of the non-disclosure, Dan contends that the defense did not have adequate time to prepare a defense and was therefore precluded from properly questioning the reliability of the photograph. Although not raised below, Dan further argues that disclosure of the photographic evidence was mandatory pursuant to HRPP 16(b)(1)(iv) and 16(b)(2)(ii) (1983).[6]

---

5. HRAP 28(b)(4)(C) provides:
 When the point involves findings or conclusions of the court below, those urged as error shall be quoted in their entirety and there shall be included a statement explaining why the findings of fact or conclusions of law are alleged to be erroneous.

6. HRPP 16 provides in pertinent part:
 (b) **Disclosure by the Prosecution.**
 (1) *Disclosure Upon Written Request of Matters Within the Prosecution's Possession.* Upon written request of defense counsel, the prosecutor shall disclose to him the following material and information within the prosecutor's possession or control:
 . . . .
 (iv) any ... photographs ... which the prosecutor intends to introduce ... or which are material to the preparation of the defense and are specifically designated in writing by defense counsel.
 . . . .

First, as we have noted, Dan's contention regarding the photograph issue was inadequately presented in his petition, which fact is reflected by the court's FOF 5 and COL 5. Dan submits that he clarified the matter in his Response, which he considered to be a "supplement" to his petition. However, in light of FOF 5/COL 5, the court apparently disagreed and gave no weight to the arguments raised in Dan's Response.

Even if we assume that Dan had properly presented the issue to the court, Dan is required to show that the non-disclosure resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. Dan's blanket statements on appeal that the non-disclosure did not give trial counsel time to prepare an unspecified defense or unspecified line of questioning simply does not satisfy this requirement.

Second, Dan's reliance on HRPP 16 is misplaced. HRPP 16(a) specifically states that "discovery under this rule may be obtained in and is limited to cases in which the defendant is charged with a felony[,]" or within the court's discretion, in non-felony cases "upon a showing of materiality and if the request is reasonable." HRPP 16(d). Besides the obvious fact that he was charged with a misdemeanor, Dan has failed to show "materiality" as well as how the photographs would have "tend[ed] to negate the guilt of the defendant as to the offense charged or would tend to reduce his punishment therefor." HRPP 16(b)(2)(ii).

Moreover,

[s]ince the right of discovery provided by Rule 16 is not of constitutional proportions, error on the part of the trial court in admitting evidence not previously disclosed by the prosecution is not presumptively prejudicial and we need not consider the question whether, if it was error in this case, it was harmless beyond a reasonable doubt. It is enough that the evidence, apart from that alleged to have been erroneously allowed, supports the verdict[.]

(2) *Disclosure Without Request of Matters Within Prosecution's Possession.* The prosecutor shall disclose to defense counsel the following material and information with the prosecutor's possession or control:

*State v. Corpuz*, 3 Haw.App. 206, 215–16, 646 P.2d 976, 983 (1982) (citing *State v. Pokini*, 57 Haw. 26, 29–30, 548 P.2d 1402 (1976)). Based on our review of the record, we conclude that the evidence, other than the photographs, clearly supports the jury's verdict in this case.

Finally, Dan contends that the non-disclosure of the photographs constituted plain error because his "substantial right to due process of law has been compromised." "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." HRPP 52(b). However, Dan's contention is unsupported by the facts or the record.

Dan has failed to show that trial counsel's alleged failure to discover or move to exclude the non-disclosed photographic evidence fell below the range of competence demanded of attorneys in criminal cases or resulted in the withdrawal of substantial impairment of a meritorious defense.

### 2. Physical Impairment of Dan's Left Arm

■ The trial court found that "[p]etitioner's second ground for relief alleges ... a) [f]ailure to develop evidence of the physical impairment of [p]etitioner's left arm[.]" FOF 6(a). More specifically, the court found:

a) As to Petitioner's physical disability and its inconsistency with his physical conduct as described by Mr. and Mrs. Mays [sic], the issue was placed before the jury. Counsel elicited a description and demonstration of Petitioner's range of movement, as well as a description of his medical treatment and the name of the treating physician. The alleged limitation was collateral to the alleged offense in that it related only to a preliminary struggle with Mrs. Mays [sic] and not the charged offense of assault upon Mr. Mays [sic]. Furthermore, the petition provides nothing more than what counsel presented at trial.

. . . .

(ii) any material or information which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce his punishment therefor.

Equally absent is an affidavit from the alleged treating physician.

FOF 7(a). Based on the aforementioned findings, the court concluded:

Under the second ground for relief, ineffective assistance of counsel, the first complaint is without merit. It is refuted by the evidentiary trial record. The issue of Petitioner's physical impairment was developed before the jury to the same extent presented in the petition. Furthermore, given the collateral nature of the issue, the petition fails to present a case of substantial impairment of a meritorious defense.

COL 6 (citation omitted).

On appeal, Dan asserts that trial counsel was ineffective because he failed to call his treating physician as an expert witness or to submit Dan's medical records to establish the impairment to his left arm. Dan points out that because the Mays were the only eye witnesses called by the prosecution to establish the assault, both of whom testified that Dan used his left hand to restrain Frank and to throw Mark to the ground, establishing the physical impairment of his left arm "would have provided the jury with uncontrovertible, detailed and graphic evidence that the Mays' repeated and material testimony could not have been true."

The record supports the court's findings that the issue of Dan's impairment was presented to the jury through Dan's own testimony at trial, at which time trial counsel had Dan demonstrate before the jury the limited range of motion of his left arm. Moreover, Dan's alleged assaultive conduct against Mark appears to have been based on Dan's kicking Mark while Mark lay on the ground. Dan has failed to show that trial counsel's action or omission in presenting the issue to the jury resulted in the withdrawal or impairment of a meritorious defense or that the trial court's findings were clearly erroneous.

### 3. Bias of the Mays in Favor of Mrs. Dan

FOF 7(c) states:

With regard to the third allegation of counsel's failure to expose the bias of Mr. and Mrs. Mays [sic] due to their involve-

ment in Petitioner's domestic difficulties, the record affirmatively refutes such allegation. Counsel elicited on cross-examination that Mr. and Mrs. Mays [sic] testified against Petitioner in Family Court proceedings, that Mrs. Mays [sic] and Mrs. Dan were best friends, that the Mays provided Mrs. Dan with financial support, that they provided safe-keeping for 68 eight pieces of Mrs. Dan's jewelry, that they were in the company of Mrs. Dan, her children and her alleged paramour, and that Mr. Mays [sic] facilitated the transfer of Mrs. Dan's Datsun 280Z to the alleged paramour.

Based on the aforementioned FOF, the court concluded that "[t]he third complaint of counsel's failure to develop the bias of Mr. and Mrs. Mays [sic] is thoroughly and clearly refuted by the evidentiary record, precluding an evidentiary hearing on that basis." COL 8 (citations omitted).

Dan argues that a showing of the Mays' bias against him would have established for the jury a motive for the Mays to have fabricated testimony against him. Dan explains that at the time of the alleged assault, "[p]etitioner and his wife were engaged in a bitter divorce where child custody was an issue." That fact, coupled with the issue regarding his physical impairment, would have demonstrated that the prosecution's case was "severely defective." Thus, Dan concludes that trial counsel's failure to establish the Mays' motive constitutes ineffective assistance of counsel. We disagree.

The record supports the circuit court's conclusion that trial counsel had presented evidence of the Mays' bias and, therefore, the court properly precluded an evidentiary hearing.

### 4. Newly Discovered Evidence

■ "Petitioner's second ground for relief alleges [trial counsel's] ... d) failure to discover new evidence in the form of Petitioner's son's observations of Mr. Mays [sic] striking Petitioner during the altercation[.]" FOF 6(d). Specifically, the court found:

With regard to the failure to discover new evidence in the form of testimony from Petitioner's son, the son was available

during the week preceding trial, having been returned to Petitioner's custody. Petitioner's own affidavit recites that *he* precluded any questioning of the boy and would strenuously oppose his testimony at trial or any court proceeding.

FOF 7(d) (emphasis in original). Based on the foregoing, the court concluded:

[Co]unsel's failure to discover new exculpatory evidence in the form of Petitioner's son ... was not attributable to counsel. The information, according to Petitioner's own affidavit, was available during the week before trial, but was precluded by Petitioner's own decision not to question the son for fear of further emotional trauma. Petitioner's affidavit recites that even today he would vehemently oppose his son's live testimony in any proceedings. Petitioner cannot complain of ineffective assistance where his own conscious decisions would limit counsel's evidentiary efforts.

COL 9. The court further concluded that the "newly discovered evidence[ ] fails to present a colorable claim for the reasons stated in Conclusions of Law No. 9 above." COL 12.

Attached to Dan's Rule 40 petition is an affidavit of Frank's court-appointed therapist, wherein he attests to having interviewed Frank one week after the conclusion of Dan's trial during which interview Frank stated that he had witnessed Mark punch Dan through the passenger window. On appeal, for the first time, Dan claims that the therapist had advised him not to discuss the incident with Frank. However, the therapist's affidavit attached to Dan's petition makes no mention of this alleged admonition. In fact, in his own affidavit in support of his Rule 40 petition, Dan admits that he "did not communicate with Frank or Aaron in regard to [the incident] due to the long separation[7] and their traumatization[,]" and asserts that he "will vehemently oppose any of his sons testifying at any court proceeding[.]"

Whether Dan could have been persuaded by competent counsel to allow Frank to be called as a defense witness, as he now argues on appeal, is irrelevant. Based on our review of the record, we agree with the circuit court's findings and conclusions that the alleged deficiency, error or omission was not attributable to trial counsel. The record clearly reflects that Dan himself precluded discovery of his son's observations prior to, during, and after trial. Having done so, he cannot now complain that failure to discover the evidence renders trial counsel ineffective. Moreover, because Dan raised the issue of Frank's therapist's admonition for the first time on appeal, this court will not consider such assertion. *See State v. Hoglund*, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) (failure to raise or properly preserve issues below precludes party from raising it on appeal).

Thus, we conclude that the trial court was "right" in concluding that the "newly discovered evidence[ ] fails to present a colorable claim[.]" COL 12.

### 5. Trial Counsel's Unavailability for Consultation

The trial court specifically found that Dan's allegation regarding non-consultation "fails to identify any subject or issue which was not developed as a result of counsel's non-availability, and consequently fails to even allege any non-speculative, actual harm[8] to Petitioner." FOF 7(b). The court, therefore, concluded that "[t]he second complaint of counsel's non-availability prior to trial fails to factually allege an actual resulting harm[9] and therefore fails to assert a colorable claim necessitating an evidentiary hearing[.]" COL 7 (citations omitted).

Dan contends that trial counsel's unavailability prior and subsequent to the trial was due to counsel's alleged drunkeness or intoxication. We therefore incorporate our discussion on this issue into Dan's arguments re-

---

7. Dan had apparently been separated from his sons until just prior to trial, regaining custody one week before trial commenced.

8. We note here that in COL 4, the trial court incorrectly concluded that in assessing claims of ineffective assistance of counsel, "[a]ctual, not speculative or theoretical, prejudice is required." COL 4. However, where the trial court renders a decision based on incorrect reasoning, we must affirm the judgment if it is correct on any other legal ground. (*See Brooks v. Minn*, 73 Haw. 566, 576–77, 836 P.2d 1081, 1087 (1992)).

9. *See supra* note 8.

garding trial counsel's alleged intoxication in the discussion below.

### 6. Trial Counsel's Alleged Intoxication

■ With respect to the allegation of trial counsel's impairment due to intoxication, the trial court found that:

> Petitioner has failed to assert any evidence of such intoxication. He cites unnamed sources attributing counsel's pretrial and posttrial non-availability to intoxication. He provided an affidavit of another client who claims to have been assaulted by counsel one month after Petitioner's trial and asserting a belief that counsel was intoxicated at that time. Petitioner has not asserted any evidence of counsel's intoxication at trial, including any observation on his own part of signs of intoxication. Counsel questioned vigorously and precisely. He objected promptly and specifically where appropriate. His questioning reflected detailed preparation and familiarity with the case.

FOF 7(e). Accordingly, the circuit court concluded that Dan "fails to state a colorable claim by failing to assert any factual basis for believing counsel was impaired by intoxication during trial. The evidentiary record of counsel's questions and objections refutes the unsupported allegation." COL 10 (citations omitted).

Just as he did in connection with his claim regarding the undisclosed photographic evidence of Mark's bruises, Dan failed to adequately state his position regarding the intoxication issue in his Rule 40 petition or the attached memorandum. Again, he acknowledged in his Response that he erred in his petition "by not specifying" who he expected to call as witnesses to prove that trial counsel had been drinking before, during and after the trial. He provided the names of three individuals in his Response as well as referred to "other colleagues and confidants" of trial counsel who would purportedly support his allegations. However, other than the affidavit provided with his petition and referred to in the court's finding of fact, no other affidavits of the additionally named individuals were produced or attached to his Response.

Dan has offered no factual basis for the claim that trial counsel was intoxicated and thus impaired during the trial. His own affidavit submitted in support of his Rule 40 petition failed to specify or even allude to any of his own personal observations of trial counsel's alleged intoxication. Our examination of the trial transcript supports the trial court's findings that trial counsel "questioned vigorously and precisely. ... [and] objected promptly and specifically where appropriate." FOF 7(e). Moreover, we find nothing in the record to support Dan's contention that trial counsel's alleged unavailability prior to and after the trial was due to counsel's intoxication.

Because Dan has failed to show that the trial court's findings with respect to trial counsel's alleged intoxication to be clearly erroneous, we hold that the trial court was "right" in concluding that Dan failed to state a colorable claim based upon trial counsel's alleged intoxication.

### B. *Ineffective Assistance of Appellate Counsel*

The court found that

> "[t]he third ground for relief alleges denial of effective assistance on appeal due to counsel's failure to file a Motion for Reconsideration of the Supreme Court's Memorandum Opinion affirming the conviction. The petition fails to allege any ground for reconsideration or potential point of attack upon the decision rendered by the Supreme Court."

FOF 8. The court concluded that Dan's claim of ineffective assistance of appellate counsel "fails to state a colorable claim by failing to even suggest a meritorious basis upon which counsel could have filed a Motion to Reconsider the Supreme Court opinion affirming Petitioner's conviction." COL 11.

■ Although the trial court applied the same standard for determining ineffective assistance of appellate counsel as that of ineffective assistance of trial counsel, we note that "[i]f ... an appealable issue is omitted as a result of the performance of counsel whose competence fell below that required of attorneys in criminal cases then appellant's counsel is constitutionally ineffective." *Briones v. State,* 74 Haw. 442, 467, 848 P.2d 966,. 978 (1993). An "appealable issue" is "an error or omission by counsel, judge, or jury resulting in the withdrawal or substantial

impairment of a potentially meritorious defense." *Id.* at 465–66, 848 P.2d at 977.

■ We agree with the circuit court that Dan has failed to allege any meritorious ground for reconsideration of our December 18, 1991 decision. Dan has failed to establish that the trial court's finding is clearly erroneous; therefore, we hold that the trial court was "right" in concluding that Dan's claim of ineffective assistance of appellate counsel "fails to state a colorable claim by failing to even suggest a meritorious basis upon which counsel could have filed a Motion to Reconsider[.]"

Based on the foregoing, we conclude that the trial court was "right" in denying Dan's Rule 40 petition without an evidentiary hearing. *Cacatian v. State,* 70 Haw. 402, 772 P.2d 691 (1989).

### C. *Petition for Court–Appointed Counsel*

■ Dan petitioned for a court-appointed attorney because he was "without sufficient resources to obtain representation." On appeal, Dan argues that because his Rule 40 petition was meritorious, the circuit court should have approved his application. In opposition to Dan's request for counsel, the prosecution argued, and the court agreed, that Dan had failed to: (1) submit the information required for a determination of indigency as set forth in the Appendix to the HRPP; and (2) comply with the statutory procedure for indigency evaluation prescribed in HRS §§ 802–1 through 802–4. Moreover, the prosecution submitted that because Dan had failed to factually present a colorable claim for relief, he was not entitled to appointed counsel even if he established his indigency, pursuant to HRPP 40(i).[10]

Dan submitted no evidence on appeal to indicate that he complied with the procedural requirements to establish his indigence. Moreover, the circuit court correctly determined that Dan's Rule 40 petition failed to present a colorable claim. Consequently, Dan was not entitled to court-appointed counsel and the motion was properly denied.

10. HRPP 40(i) essentially provides that where a petitioner is unable to pay the costs of the proceedings or to afford counsel, the court shall refer the petition to the public defender for representation "provided that no such referral need

### IV. *CONCLUSION*

Based on the foregoing, we affirm the circuit court's orders denying Dan's Rule 40 petition and his request for court-appointed counsel.

be made if the petitioner's claim is patently frivolous and without trace of support either in the record or from other evidence submitted by the petitioner."