**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000043
24-DEC-2014
09:07 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

NICHOLAS K. NICHOLS, Petitioner-Appellant,
vs.
STATE OF HAWAI'I, Respondent-Appellee

CAAP-12-0000043

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(SPP NO. 11-1-0053 (CR NOS. 08-1-1354 & 08-1-1762))

DECEMBER 24, 2014

NAKAMURA, CHIEF JUDGE, AND FOLEY AND FUJISE, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

Petitioner-Appellant Nicholas K. Nichols (Nichols) filed a "Petition for Post-Conviction Relief" (Petition) pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 40 (2006). Nichols was convicted of numerous offenses in two separate criminal cases -- one case charging felony offenses arising out of a home invasion and shooting and the second case charging felony offenses arising out of a serious assault. The trial court sentenced Nichols to a combination of concurrent and consecutive prison terms for a total maximum term of thirty years of imprisonment. The Hawai'i Paroling Authority (HPA) set Nichols' minimum terms of imprisonment the same as his maximum terms, so that he was subject to a total minimum term of thirty

years of imprisonment, the same as the total maximum term imposed by the trial court. In the HPA's corrected order fixing the minimum terms of imprisonment, the HPA placed Nichols in the Level III level of punishment under its "Guidelines for Establishing Minimum Terms of Incarceration" (Guidelines). The only explanation provided by the HPA for placing Nichols in punishment Level III and imposing minimum terms of incarceration that were the same as the maximum terms was its identification of "(1) Nature of Offense; [and] (2) Degree of Injury to Person" as "significant factors . . . in determining the level of punishment[.]"

In his Petition, Nichols contended that the HPA improperly set his minimum terms and that his counsel had provided ineffective assistance during that process. Nichols asserted four grounds for relief:

> Ground One: The HPA acted as a mere rubberstamp of the recommendations given by the prosecutor, with no review of the facts. Sentencing outside the guidelines set by the HPA was inconsistent, arbitrary and capricious.
>
> Ground Two: The HPA failed to sufficiently specify its rationale for determining the Level of Punishment and describe the significant criteria it considered in Petitioner's history or offense upon which the HPA's determination was based.
>
> Ground Three: The HPA Used the Wrong Level of Punishment Assessment as the Starting Point for Its Minimum fixing Determination, Chose the Wrong Level of Punishment Upon Which the HPA fixed the Minimum Terms Using the Criteria: Nature of Offense at a Level of Punishment Inconsistent with the Language of the Numerous Underlying Statutory Offenses in violation of HPA Guidelines, [Hawaii Revised Statutes (HRS)] § 706-699 and [Hawai'i Administrative Rules (HAR)] Ch[ap]ter 700, While Ill[e]gally Comparing Petitioner's Offenses Against Non-Identical Statutory Offenses.
>
> Ground Four: Petitioner's Counsel failed to assert the correct level of punishment, failed to discern that the Notice (Order) was constitutionally deficient, made no attempt to protect Petitioner's rights through any appellate or post-conviction actions, and such failures of Counsel are such that a reasonably informed, skilled or diligent attorney would not have made, where such actions or omissions denied Petitioner a meritorious defense that was available to Petitioner, amounting to ineffective assistance of counsel.

2

On December 22, 2011, the Circuit Court of the First Circuit (Circuit Court)[1] filed its Order dismissing and denying the Petition (Order Denying Petition). The Circuit Court concluded that the Petition was "patently frivolous and without trace of support in the record" and that "[Nichols'] argument and allegations have no merit on this record and under the law."

Nichols appeals from the Order Denying Petition. On appeal, Nichols contends that the Circuit Court erred by failing to include findings of fact or conclusions of law addressing each of his grounds for relief in its Order Denying Petition. The essence of his argument is that the Circuit Court erred in denying his Petition because the HPA acted improperly in setting his minimum terms.

The decisions of the HPA establishing minimum terms of incarceration are subject to judicial review, and judicial intervention is appropriate where the HPA has "'acted arbitrarily and capriciously so as to give rise to a due process violation[.]'" Coulter v. State, 116 Hawai'i 181, 184, 172 P.3d 493, 496 (2007) (citation omitted). Where the HPA has taken the extraordinary action of setting the minimum term of imprisonment at the maximum term, thereby effectively eliminating the opportunity for parole, the HPA's explanation of the reasons for its action, beyond simply listing the significant factors under the Guidelines, would assist the court in reviewing whether the HPA's action was arbitrary and capricious. We may require a more detailed explanation in such cases, especially for class B felonies or higher, where the absence of a more detailed explanation would prevent our meaningful review of, or leave us in doubt about, whether the HPA acted arbitrarily or capriciously in applying its Guidelines. In this case, however, we conclude that a more detailed explanation was not necessary for proper judicial review of the HPA's decision. This is because the record in this case provides clear support for the HPA's exercise

---

[1] The Honorable Karen S.S. Ahn presided.

of its discretion in fixing Nichols' minimum terms under the Guidelines. Accordingly, we affirm the Circuit Court's Order Denying Petition.

BACKGROUND

In his underlying criminal cases, Nichols pleaded guilty to seventeen felony counts charged in two separate criminal cases. Nichols was charged in Criminal No. 08-1-1762 with fifteen felony offenses arising out of a home invasion and shooting. He was charged in Criminal No. 08-1-1354 with two felony offenses arising out of an assault.

A.

The assault case involved an attack on two men at Kalākaua District Park. According to information in the record, on July 30, 2008, at approximately 10 p.m., Nichols and a group of males assaulted Ashleigh Kamaile (Kamaile) and Rudy Tabios (Tabios) in the park. Nichols' group confronted Kamaile and asked him, "You think you tough?" Nichols punched Kamaile, causing Kamaile to fall to the ground. Tabios saw Kamaile being attacked by the group of males while Kamaile was on the ground. Tabios grabbed a bat and went to help Kamaile. Nichols, carrying a broken forty ounce bottle, threw the broken bottle at Tabios' face, severely cutting Tabios' face and causing him to drop the bat. Nichols then grabbed the bat and began beating Tabios with it. Nichols hit Tabios on the back of the head with the bat, causing him to fall to his knees. Nichols used the bat to strike Tabios three more times on the head as well as on the shoulder and back. While Nichols was assaulting Tabios with the bat, other males with Nichols were kicking Tabios. The injuries suffered by Tabios included permanent disfigurement from a five-inch long, extreme facial laceration as well as laceration to his scalp.

Nichols was charged in the assault case with the felony offenses of first-degree assault for causing serious bodily

4

injury to Tabios and second-degree assault for causing bodily injury to Tabios with a dangerous instrument.[2/]

B.

On August 11, 2008, two weeks after the assault on Tabios at Kalākaua District Park, Nichols committed a home invasion kidnapping and robbery, during which he shot Timothy Lapitan (Lapitan), resulting in Lapitan becoming paralyzed. According to information in the record, Nichols and several other men, all wearing black masks and carrying guns, entered Lapitan's home with the intent to rob Lapitan. During the home invasion, Nichols and his accomplices held Lapitan, his mother, and his sister at gunpoint. Two minor children of Lapitan's sister were also present. When Lapitan attempted to push some of the robbers out of the house, Nichols shot him in the abdomen. Lapitan was taken to Queen's Medical Center and was placed in the Intensive Care Unit in critical condition. The shooting almost killed Lapitan and left him paralyzed and unable to walk.

Nichols and four co-defendants were indicted for offenses arising out of the home invasion and shooting. Nichols was charged in fifteen felony counts, including attempted second-degree murder, kidnapping, first-degree robbery, first-degree burglary, and carrying or use of a firearm in the commission of a separate felony. The indictment also notified Nichols that he was potentially subject to extended term sentencing, pursuant to Hawaii Revised Statutes (HRS) §§ 706-661 and 706-662(4)(a) as a multiple offender, and mandatory minimum terms of imprisonment, pursuant to HRS § 706-660.1 for the possession or use of a firearm during the commission of a felony.

---

[2/] Nichols was also charged with misdemeanor third-degree assault for causing bodily injury to Kamaile during the Kalākaua District Park incident on July 30, 2008, and with misdemeanor third-degree assault for causing bodily injury to Tabios in a separate assault on May 1, 2008.

C.

Pursuant to a plea agreement, Nichols pleaded guilty to two felony counts in the assault case[3/] and fifteen felony counts in the home invasion/shooting case. As part of the plea agreement, the attempted second-degree murder charge in the home invasion/shooting case was reduced to first-degree assault. The parties agreed that for each count, the maximum indeterminate terms of imprisonment would be imposed. The plea agreement provided that the multiple sentences imposed within each case would run concurrently with each other, but it left each party free to argue whether the sentences imposed in the separate cases would run consecutively or concurrently. In addition, the prosecution agreed not to seek extended terms of imprisonment. The plea agreement required the Circuit Court to bind itself to the terms of the plea agreement pursuant to HRPP Rule 11(e)(3) (2007).

On October 26, 2009, the Circuit Court imposed sentence on Nichols in both cases. In the assault case, Criminal No. 08-1-1354, the Circuit Court imposed the maximum term of imprisonment on each count, to run concurrently with each other, for a total imprisonment term of ten years. In the home invasion/shooting case, Criminal No. 08-1-1762, the Circuit Court imposed the maximum term of imprisonment on each count and a five-year mandatory minimum term on seven of the counts, with all terms to run concurrently to each other, for a total imprisonment term of twenty years. The Circuit Court ordered that the concurrent sentences imposed in the assault case be served consecutively to the concurrent sentences imposed in the home invasion/shooting case. Accordingly, Nichols received a total maximum sentence of thirty years of imprisonment for both cases, with a five-year mandatory minimum term.

---

[3/] Nichols also pleaded guilty to the two misdemeanor third-degree assault offenses with which he had been charged in the assault case. See note 2, supra.

D.

On November 30, 2009, the HPA issued a "Notice of Hearing and Rights Request for Legal Counsel" (Notice of Hearing) to Nichols, informing him of his upcoming minimum term hearing. Nichols acknowledged his receipt of the Notice of Hearing and requested the assistance of his court appointed counsel. Nichols also submitted a handwritten letter to the HPA acknowledging his errors and describing the ways in which he was working to turn his life around.

On February 16, 2010, Nichols appeared at the HPA hearing with his court appointed counsel, Walter Rodby. On that same day, the HPA issued its "Notice and Order Fixing Minimum Term(s) of Imprisonment" (Minimum Term Order). The Minimum Term Order set the minimum terms for Nichols' seventeen felony convictions the same as the maximum terms to which Nichols had been sentenced. Accordingly, Nichols' total minimum term of imprisonment was set at thirty years, the same as his overall maximum sentence. The HPA stated that its Minimum Term Order was based on a Level III "Level of Punishment" and listed the "significant factors identified in determining the level of punishment" as "(1) Nature of Offense; (2) Degree of Injury to Person." No other explanation was provided in the Minimum Term Order for the HPA's fixing of the minimum terms.

On March 29, 2010, the HPA issued a "Corrected Copy" of its Minimum Term Order (Corrected Minimum Term Order). The Corrected Minimum Term Order again set the minimum terms at the maximum terms for Nichols' seventeen felony offenses, based on the same level of punishment and significant factors as the Minimum Term Order, and it used identical language as the Minimum Term Order to describe the level of punishment and significant factors identified in determining the level of punishment. The only difference between the Minimum Term Order and the Corrected Minimum Term Order was the correction of the dates on which the minimum terms would expire, which had been improperly calculated and set too far in the future in the Minimum Term Order.

7

E.

On September 23, 2011, Nichols filed his Petition challenging the minimum terms of imprisonment set by the HPA in its Corrected Minimum Term Order. The Circuit Court denied the Petition without a hearing and filed its Order Denying Petition on December 22, 2011. The Order Denying Petition states that the Circuit Court "dismisses and denies [Nichols' Petition] because it is patently frivolous and without trace of support in the record, and because [Nichols'] arguments and allegations have no merit on this record and under the law." This appeal followed.

DISCUSSION

In his points of error on appeal, Nichols contends that the Circuit Court erred by failing to include findings of fact or conclusions of law addressing each of his grounds for relief in its Order Denying Petition. Underlying these points of error is his claim that the Circuit Court erred in denying his Petition because the HPA acted improperly in setting his minimum terms. We address Nichols' points of error as well as his underlying claim.

I.

A petition filed pursuant to HRPP Rule 40 is an appropriate means for a prisoner to challenge a minimum term of imprisonment set by the HPA. Coulter v. State, 116 Hawai'i 181, 184, 172 P.3d 493, 496 (2007). With respect to an HPA decision establishing a minimum term of imprisonment, "judicial intervention is appropriate where the HPA has failed to exercise any discretion at all, acted arbitrarily and capriciously so as to give rise to a due process violation, or otherwise violated the prisoner's constitutional rights." Williamson v. Hawai'i Paroling Auth., 97 Hawai'i 183, 195, 35 P.3d 210, 222 (2001).

In support of its standard for reviewing HPA minimum term decisions, the Hawai'i Supreme Court in Williamson cited the limited scope of review applied by other jurisdictions in reviewing decisions denying parole. Id. at 194–95, 35 P.3d at 221–22. The supreme court referred to decisions from other

8

jurisdictions, which concluded that a court "cannot substitute its judgment on questions of parole for that of the parole board"; that judicial review is limited to situations where "the decision of a state administrative agency is an arbitrary one . . . made without fair, solid, and substantial cause or reason; but it is not necessarily so because mistaken or even wrong"; and that "review would be exercised to determine whether the parole board has followed the appropriate criteria, rational and consistent with the applicable statutes and that its decision is not arbitrary and capricious nor based on impermissible considerations." Id. at 194, 35 P.3d at 221 (formatting altered; internal quotation marks, citations, emphasis, and brackets omitted) (quoting Turner v. Hawaii Paroling Auth., 93 Hawai'i 298, 307-08, 1 P.3d 768, 777-78 (2000)).

We review a trial court's denial of an HRPP Rule 40 petition without a hearing for failure to present a colorable claim de novo. Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).

> To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the [outcome of the challenged proceeding], however, a petitioner's conclusions need not be regarded as true. Where examination of the record . . . indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing.

Id. (block quote format altered; citation ommitted).

II.

With respect to Nichols' claim that the Circuit Court erred in failing to include findings of fact and conclusions of law in its Order Denying Petition, the Circuit Court ruled that Nichols' Petition was "patently frivolous and without trace of support in the record" in denying the Petition without a hearing. HRPP Rule 40(f) sets forth the standard for a court to grant a hearing on a petition and provides in relevant part:

> If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without

trace of support either in the record or from other evidence submitted by the petitioner.

It is well settled that the Circuit Court is not required to issue findings of fact or conclusions of law when denying a petition pursuant to HRPP Rule 40(f). Stanley v. State, 76 Hawai'i 446, 449, 879 P.2d 551, 554 (1994). Therefore, if the Circuit Court correctly denied the Petition pursuant to HRPP Rule 40(f), the Circuit Court did not err in failing to include findings of fact or conclusions of law in its Order Denying Petition.

III.

The question therefore becomes whether the Circuit Court correctly denied the Petition without a hearing. In other words, whether Nichols' Petition raised a colorable claim that the HPA acted arbitrarily and capriciously so as to give rise to a due process violation in fixing Nichols' total minimum term of imprisonment at thirty years, the same as the total maximum term imposed by the trial court. The only explanation provided by the HPA for its action was the following statement in the Corrected Minimum Term Order:

> Level of Punishment: Level III.
> Significant factors identified in determining the level of punishment: (1) Nature of Offense; (2) Degree of Injury to Person.

Under the HPA Guidelines, a Level III level of punishment has: (1) a minimum term range of ten to twenty years where the court imposes a twenty-year maximum term (the maximum term for a class A felony); and (2) a minimum term range of five to ten years where the court imposes a ten-year maximum term (the maximum term for a class B felony). Nichols was convicted of twelve class A felonies in the home/invasion shooting case and one class B felony in the assault case. These were the offenses carrying the highest maximum term of imprisonment in each case. Nichols' twelve convictions for class A felonies in the home

10

invasion/shooting case each carried a maximum indeterminate term of imprisonment of twenty years, HRS § 706-659 (Supp. 2008), and his conviction for a class B felony in the assault case carried a maximum indeterminate term of imprisonment of ten years. HRS § 706-660 (1993). In sentencing Nichols, the Circuit Court ordered that the concurrent maximum terms of imprisonment it imposed in the assault case be served consecutively to the concurrent maximum terms of imprisonment it imposed in the home invasion/shooting case.

A.

In discussing an appellate court's review of a trial court's sentencing decision, the Hawai'i Supreme Court, in State v. Hussein, 122 Hawai'i 495, 503-04, 229 P.3d 313, 321-22 (2010), made the following observation:

> [The Hawai'i Supreme Court] has indicated that "[a]lthough there is no requirement for the sentencing court *to state its reasons for imposing sentence, we have urged and strongly recommended that the sentencing court do so*[.]" [State v.] Lau, 73 Haw. [259,] 263, 831 P.2d [523,] 525 (emphasis added); see also [State v.] Gaylord, 78 Hawai'i [127,] 144, 890 P.2d [1167,] 1184 ("In order to facilitate appellate review for abuse of a trial court's sentencing discretion, and whenever a defendant is qualified for sentencing alternatives and the sentence imposed is unsatisfactory to the defendant, we strongly encourage and recommend that the sentencing court state its reasons for imposing the particular sentence.") (Quotation marks, brackets, ellipses, and citation omitted.); State v. Sinagoga, 81 Hawai'i 421, 429, 918 P.2d 228, 236 (App. 1996) (stating that the "preferable practice is for the sentencing court to . . . acknowledge on the record that it has considered the factors enumerated in HRS § 706-606 when imposing concurrent or consecutive sentences under HRS § 706-668.5"), overruled on other grounds by State v. Veikoso, 102 Hawai'i 219, 226, 74 P.3d 575, 582 (2003); cf. State v. Valera, 74 Haw. 424, 435-36, 848 P.2d 376, 381 (1993) (holding that "the sentence . . . imposed should be tailored to the particular circumstances of a defendant's case[,]" that "a sentencing judge is required to consider specific statutory factors in determining the sentence to be imposed" under HRS § 706-606 and "that a sentencing judge's discretion is [not] without limits" as "[a] sentencing judge is still required to impose a fair, proper, and just sentence, based upon the crime of which the defendant was convicted") (internal quotation marks and citations omitted).

(Ellipsis points and some brackets in original.)

In <u>Hussein</u>, the Hawai'i Supreme Court established a new requirement in cases where the trial court imposes a consecutive sentence. The supreme court held:

> In this case, a concurrent sentence would have resulted in ten years of imprisonment, as opposed to the twenty years that [Hussein] received as a consequence of running the terms consecutively. Although to this point we have recognized the benefits of a statement of reasons but not mandated it, we now conclude, based on the reasons and circumstances set forth *supra*, that a court must state its reasons as to why a consecutive sentence rather than a concurrent one was required.
>
> Such a requirement serves dual purposes. First, reasons identify the facts or circumstances within the range of statutory factors that a court considers important in determining that a consecutive sentence is appropriate. An express statement, which evinces not merely consideration of the factors, but recites the specific circumstances that led the court to impose sentences consecutively in a particular case, provides a meaningful rationale to the defendant, the victim, and the public.
>
> Second, reasons provide the conclusions drawn by the court from consideration of all the facts that pertain to the statutory factors. It is vital, for example, for the defendant to be specifically informed that the court has concluded that he or she is dangerous to the safety of the public, or poses an unacceptable risk of re-offending, or that rehabilitation appears unlikely due to his or her lack of motivation and a failure to demonstrate any interest in treatment, or that the multiplicity of offenses and victims and the impact upon the victims' lives warrant imposition of a consecutive term. Hence, reasons confirm for the defendant, the victim, the public, and the appellate court, that the decision to impose consecutive sentences was deliberate, rational, and fair.
>
> <u>Consequently, after the filing date of the judgment herein, circuit courts must state on the record at the time of sentencing the reasons for imposing a consecutive sentence</u>.

<u>Id.</u> at 509-10, 229 P.3d at 327-28 (emphasis added).

### B.

The HPA's establishment of a defendant's minimum term of imprisonment directly affects when the defendant will actually be released from prison. From the standpoint of a criminal defendant, the HPA's decision in setting the minimum term of imprisonment may be more important and significant than a trial court's decision to impose the maximum indeterminate term or to impose a consecutive sentence. This is especially true when the

12

HPA sets the minimum term of imprisonment at the maximum term for the offense. However, the trial court's sentencing decisions and the HPA's parole decisions (including the HPA's minimum term determination) are subject to different statutory schemes.

In Williamson, the Hawai'i Supreme Court addressed the question of whether the HPA had the authority to set a prisoner's minimum term of imprisonment at a period equal to his or her maximum sentence under the statutory scheme enacted by our Legislature. The supreme court held that neither the plain language of the statutory scheme, nor the relevant policy considerations, justified restricting the HPA's authority by prohibiting it from setting prisoners' minimum terms at their maximum sentences. Williamson, 97 Hawai'i at 193-94, 35 P.3d at 220-21.

The supreme court noted that "[t]he legislature has stated that the 'dual and inseparable purposes of parole' are 'the protection of society on the one hand and the rehabilitation of the offender on the other.'" Id. at 194, 35 P.3d at 221 (citation omitted). It further noted that the Legislature has vested the HPA "with the 'exclusive authority to determine the minimum time which must be served before the prisoner will be eligible for parole.'" Id. (citation omitted). The court held that as a policy matter, it was unnecessary to restrict the HPA's authority to set the minimum term at the maximum sentence. In support of this holding, the court cited the procedural protections provided to prisoners under the statutory scheme as well as the ability of a prisoner to seek judicial review of the HPA's minimum term determination through an HRPP Rule 40 petition. Id. at 194-95, 35 P.3d at 221-22. While the scope of judicial review is limited, the supreme court held that "judicial intervention is appropriate where the HPA has failed to exercise any discretion at all, acted arbitrarily and capriciously so as to give rise to a due process violation, or otherwise violated the prisoner's constitutional rights." Id. at 195, 35 P.3d at 222.

13

The court concluded that:

> "'parole is a matter of legislative grace, and the denial of it to certain offenders is within legislative discretion.'" State v. Kumukau, 71 Haw. 218, 227, 787 P.2d 682, 687 (1990) (quoting State v. Freitas, 61 Haw. 262, 270, 602 P.2d 914, 921 (1979)). As such, it was with[in] the legislature's discretion to allow the HPA to deny parole to certain prisoners by setting their minimum terms at periods equal to their maximum sentences. Therefore, we assume that, if the legislature had intended to limit the HPA's discretion by prohibiting it from doing so, it would have enacted an express restriction. We will not read this limitation into the statutes. If the HPA's authority to establish minimum terms is to be limited in this manner, it is incumbent upon the legislature, not the appellate courts, to do so.

Id.

C.

It is clear from Williamson that the HPA had the statutory authority to set Nichols' minimum terms of imprisonment at his maximum terms and thereby set his total minimum term at the thirty-year maximum term for his offenses. It also seems clear that the HPA's setting of Nichols' total minimum term at the total maximum term should constitute an exceptional situation. One of the dual purposes of parole is the rehabilitation of the offender, and permitting a prisoner to be released on parole would appear to be an integral part of the normal rehabilitation process. In Williamson, the total minimum term was set at five years, which was the total maximum term for the concurrent sentences imposed on Williamson's two class C felonies. See id. at 186-87, 35 P.3d at 213-14. Here, Nichols' total minimum term was set at thirty years, the total maximum term for Nichols' sentences which required him to serve his prison term on a class B felony consecutively to his concurrent prison terms on class A felonies.

Williamson relied in part on the availability of judicial review in concluding that it was not necessary to restrict the HPA's authority to set the minimum term of imprisonment at the maximum sentence. Id. at 194-95, 35 P.3d at 221-22. Among other circumstances, "judicial intervention is appropriate where the HPA has . . . acted arbitrarily and

14

capriciously so as to give rise to a due process violation" in applying the Guidelines. See id. at 195, 35 P.3d at 222.

Where the HPA has taken the extraordinary action of setting the minimum term of imprisonment at the maximum term, a more detailed explanation by the HPA for its decision beyond merely listing the significant Guideline factors would assist the court in reviewing whether the HPA's action was arbitrary and capricious. Where the absence of a more detailed explanation would prevent our meaningful review of, or leave us in doubt about, whether the HPA acted arbitrarily or capriciously in applying its Guidelines, we may require a more detailed explanation.[4] We conclude, however, that in this case, a more detailed explanation by HPA was not necessary for proper judicial review of the HPA's decision. As explained below, in this case, the record provides clear support for the HPA's exercise of its discretion in fixing Nichols' minimum terms under the Guidelines.

IV.

A.

Nichols' contentions that the HPA set his minimum terms outside the Guidelines and acted as a "mere rubber stamp" for the prosecution are without merit. Nichols' minimum terms were set within the range under the HPA Guidelines for the Level III level of punishment found by the HPA.[5] The HPA set Nichols' minimum terms after a hearing at which he was represented by counsel, and he provides no basis for his "mere rubber stamp" contention.

B.

Based on the record in this case, we reject Nichols' claims that the HPA failed to sufficiently specify its rationale for determining his level of punishment and describe the

_____

[4] The concerns in this regard and the impact on a prisoner are heightened when the HPA sets a prisoner's minimum term at the maximum term for class B felonies or higher.

[5] As noted supra, under the HPA Guidelines, the minimum term range of imprisonment for a Level III level of punishment includes the maximum term imposed by the Circuit Court for Nichols' class A and class B felonies.

significant criteria it considered. We also reject his claim that the HPA misapplied the Guidelines by using the wrong level of punishment.

In setting Nichols' minimum terms of incarceration, the HPA placed him in the Level III level of punishment. Under its Guidelines, the HPA focuses on three primary criteria to determine the appropriate level of punishment and the minimum term: (1) Nature of the Offense; (2) Degree of Injury/Loss to Person or Property; and (3) Offender's Criminal History. In its Corrected Minimum Term Order, the HPA cited "(1) Nature of Offense; [and] (2) Degree of Injury to Person" as the significant factors it relied upon in determining Nichols' Level III level of punishment.

Under the Nature of the Offense criteria, the standard for a Level III level of punishment is met if "[t]he offense was against a person(s) and the offender displayed a callous and/or cruel disregard for the safety and welfare of others[.]" Under the Degree of Injury/Loss to Person or Property criteria, the standard for a Level III level of punishment is met if "[t]he injury or loss suffered by the victim(s) was more than those experienced by similarly situated victims."

Here, the record provides ample support for the HPA's reliance on the "Nature of Offense" and "Degree of Injury to Person" in placing Nichols in the Level III level of punishment. The record shows in both the home invasion/shooting and assault cases, Nichols committed offenses against persons and that he "displayed a callous and/or cruel disregard for the safety and welfare of others[.]" In the home invasion/shooting case, Nichols terrorized an entire family, including minor children, holding the victims at gunpoint. He also shot Lapitan, when Lapitan tried to push some of the robbers from his home. In the assault case, Nichols threw a broken bottle at Tabios' face, resulting in a severe laceration, then proceeded to beat Tabios with a bat while others were kicking Tabios. There was strong justification in the record for a finding by the HPA that Nichols

displayed a callous and/or cruel disregard for the safety and welfare of others in committing the offenses in both cases.

The record also supports a determination by the HPA that "[t]he injury or loss suffered by the victim(s) was more than those experienced by similarly situated victims." In the home invasion/shooting case, Nichols was convicted of class A felonies for kidnapping, first-degree robbery, and carrying or use of a firearm in the commission of a separate felony. Nichols' shooting of Lapitan resulted in Lapitan being paralyzed, a greater loss than typically experienced by victims of these three offenses. In the assault case, Nichols was convicted of the class B felony of first-degree assault for causing Tabios to suffer permanent disfigurement from a five-inch long, extreme facial laceration. The permanent disfigurement to Tabios' face provided a basis for the HPA to determine that the loss Tabios suffered was more than experienced by similarly situated victims.

The record in this case provides clear support for the factors cited by the HPA in setting Nichols' minimum terms of imprisonment. In light of the record, we conclude that in exercising its discretion to establish Nichols' minimum terms, the HPA did not act arbitrarily or capriciously in applying the Guidelines.

C.

Nichols' claim that his counsel provided ineffective assistance by failing to assert the correct level of punishment or discern that the Corrected Minimum Term Order was constitutionally deficient is without merit. As previously discussed, the record supports the HPA's determination of Level III as the applicable level of punishment. In addition, Nichols does not provide any valid basis to support a claim that the Corrected Minimum Term Order was constitutionally deficient. Accordingly, Nichols has not shown that his counsel provided ineffective assistance.

17

CONCLUSION

For the foregoing reasons, we affirm the Circuit Court's Order Denying Petition.

On the briefs:

Nicholas K. Nichols
Petitioner-Appellant Pro Se

Richard W. Stacey
Diane K. Taira
Deputy Attorneys General
for Respondent-Appellee