**Electronically Filed
Intermediate Court of Appeals
30497
30-MAR-2012
11:12 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---O0O---

ISIDRO OSWALDO CUN-LARA, Petitioner-Appellant, v.
STATE OF HAWAI'I, Respondent-Appellee

NO. 30497

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(SPECIAL PROCEEDING - PRISONER NO. 09-1-0008;
CRIMINAL NO. 06-1-0145)

MARCH 30, 2012

NAKAMURA, C.J., REIFURTH AND GINOZA, JJ.

AMENDED OPINION OF THE COURT BY REIFURTH, J.

Petitioner-Appellant Isidro Oswaldo Cun-Lara ("Cun-Lara") appeals from the Findings of Fact; Conclusions of Law; Order Denying Petitioner Isidro Oswaldo Cun-Lara's Rule 40, HRPP Petition for Post-Conviction Relief filed in the Circuit Court of the Fifth Circuit ("Circuit Court") on May 4, 2010.[1/] The Circuit Court held that Cun-Lara's November 9, 2009 Petition to Vacate, Set Aside, or Correct Judgment ("Petition") failed to raise any colorable claims and denied the petition without a hearing.

On appeal, Cun-Lara argues that the Circuit Court erred in concluding that the merits of his Petition were patently frivolous and without a trace of support in the record such that the Petition raised no colorable claim. Specifically, Cun-Lara contends that his no-contest plea was not entered in an intelligent, knowing, and voluntary manner because his attorney,

---

[1/]    The Honorable Randal G.B. Valenciano presided.

Alfred B. Castillo, Jr. ("Attorney Castillo"), provided him with ineffective assistance of counsel and because he was not provided with a Spanish interpreter at the July 23, 2007 hearing at which his change of plea from not guilty to no contest was accepted by the Circuit Court ("Change-of-Plea Hearing").

We affirm.

I.   BACKGROUND

A.   Pre-Petition

On June 14, 2006, Cun-Lara was charged by complaint in Criminal No. 06-1-0145 ("criminal case") with: (1) Unlawful Methamphetamine Trafficking in violation of Hawaii Revised Statutes ("HRS") § 712-1240.6(2);[2] (2) Promoting a Dangerous Drug in the Third Degree in violation of HRS § 712-1243;[3] and

---

[2]     At the time relevant to this case, HRS § 712-1240.6 provided in relevant part:

> (1) A person commits the offense of unlawful methamphetamine trafficking if the person knowingly manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute or dispense, one or more preparations, compounds, mixtures, or substances of methamphetamine, or any of its salts, isomers, and salts of isomers.
>
> (2) The manufacture, distribution, or dispensing of or possession with intent to manufacture, distribute, or dispense one or more preparations, compounds, mixtures, or substances of an aggregate weight of one-eighth ounce of more of methamphetamine, or any of its salts, isomers, and salts of isomers is a class A felony with a mandatory minimum prison terms of five years[.]

HAW. REV. STAT. § 712-1240.6 (Supp. 2005).

Subsections under HRS § 712-1240.6(2) provided for increased maximum terms of imprisonment or mandatory minimum terms if certain aggravating factors were established, such as the defendant having a prior felony drug conviction or death or serious bodily injury to any person other than the defendant resulting from the offense.

HRS § 712-1240.6 was repealed effective June 22, 2006. 2006 Haw. Sess. Laws Act 230, § 50 at 1024.

[3]     HRS § 712-1243 provided:

> (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possess any dangerous drug in any amount.
>
> (2) Promoting a dangerous drug in the third degree is a class C felony.

HAW. REV. STAT. § 712-1243 (Supp. 2011).

(3) Unlawful use of or Possession with Intent to Use Drug Paraphernalia in violation of HRS § 329-43.5(a)[4].

The Circuit Court made the following unchallenged findings of fact[5]:

On June 20, 2006, Cun-Lara appeared for arraignment on the charges. The arraignment was conducted in English. Neither Cun-Lara nor his original counsel, Attorney Castillo, requested an interpreter during the hearing.

On July 20, 2006, Cun-Lara appeared in court for a preliminary hearing, at which time Cun-Lara and Attorney Castillo submitted a document, written in English and signed by Cun-Lara, waiving Cun-Lara's right to a preliminary hearing. At the hearing, the Honorable Judge Trudy Senda conducted a colloquy, in English, with Cun-Lara about the waiver document. Cun-Lara responded to all of Judge Senda's questions in English and did not inform Judge Senda that he did not understand the colloquy or the questioning. During the hearing, neither Cun-Lara nor Attorney Castillo requested an interpreter.

On August 21, 2006, Cun-Lara was arraigned in Circuit Court before the Honorable Judge George Masuoka. The hearing was conducted in English. Neither Cun-Lara nor Attorney Castillo requested an interpreter.

Thereafter, the trial was continued several times through stipulations filed with the Circuit Court on August 2,

---

[4] HRS § 329-43.5(a) states:

> It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706-660 and, if appropriate as provided in section 706-641, fined pursuant to section 706-640.

HAW. REV. STAT. § 329-43.5(a) (2010).

[5] "Findings of fact that are unchallenged on appeal are the operative facts of a case." *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawai'i 224, 239, 982 P.2d 853, 868 (1999), *superseded by statute on other grounds as recognized in Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 113 Hawai'i 77, 107, 148 P.3d 1179, 1209 (2006).

2006, October 30, 2006, December 21, 2006, February 9, 2007 and April 18, 2007. All of the stipulations were written in English. Cun-Lara reviewed, approved, and signed the stipulations without assistance of an interpreter.

At the Change-of-Plea Hearing, Cun-Lara pleaded no contest to Count 3, Unlawful Use or Possession with Intent to Use Drug Paraphernalia, and made a motion to defer acceptance of his no-contest plea. During the hearing, Cun-Lara submitted a form on which the basis for his proposed change of plea is explained ("No-Contest-Plea Form"). The No-Contest-Plea Form was signed by Cun-Lara, was written in English, and filed in open court on July 23, 2007. On the form, Cun-Lara stated that:

1.    . . . I speak, read, write, and understand the English language or this document has been read to me or has been interpreted for me.

. . . .

5.    I know I have the right to plead not guilty and have a speedy and public trial by jury or by the court. I know in a trial the government is required to prove my guilt beyond a reasonable doubt. I know I can see, hear, and question witnesses who testify against me, and that I may call my own witnesses to testify for me at trial. . . .

. . . .

10.    I know that, if I am not a citizen of the United States, a conviction or a plea of guilty or no contest, whether acceptance of my plea is deferred or not, may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.

11.    I am signing this [No-Contest-Plea Form] after I have gone over all of it with my lawyer. I know I will not be permitted to withdraw my plea. I am signing this form in the presence of my lawyer. I have no complaints about my lawyer and I am satisfied with what he/she has done for me.

At the Change-of-Plea Hearing, Cun-Lara informed the Circuit Court that, although English was his second language, he was able to read and write in English and that he was not having any difficulty understanding what was being said in English. The Circuit Court informed Cun-Lara that it was not bound by his plea agreement with the State, and Cun-Lara acknowledged that he understood.

The Circuit Court further explained a number of rights associated with a jury trial that Cun-Lara would waive if he proceeded with the no-contest plea, including the right to a jury of twelve community members, that Cun-Lara could not be convicted unless the jury unanimously agreed that he was guilty beyond a reasonable doubt, and that Cun-Lara had a right to cross-examine the State's witnesses, call his own witnesses, and to testify or not testify at trial. Cun Lara acknowledged in English that he understood the court's explanations.

The Circuit Court further informed Cun-Lara of the possible consequences that a no-contest plea could have on Cun-Lara's immigration status if he was not a U.S. citizen. Cun-Lara again acknowledged in English that he understood. Cun-Lara further acknowledged that he was satisfied with Attorney Castillo's advice and that he did not have any complaints about the legal advice or legal representation provided by Attorney Castillo.

At the beginning of the Change-of-Plea Hearing, Attorney Castillo advised the Circuit Court that Cun-Lara understood English and did not require an interpreter. During the Circuit Court's plea colloquy, Cun-Lara answered the Circuit Court's questions in the affirmative or the negative depending on the question, and frequently responded with cogent sentences properly addressing the corresponding questions. The transcript of the Change-of-Plea Hearing ("COP Transcript") reveals the following pertinent dialogue:

> THE COURT: Now, your attorney talked -- informed the Court that English is your second language --
>
> [Cun-Lara]: Yes.
>
> THE COURT: Is that correct? But in spite of English being your second language, do you read, write, and understand the English language?
>
> [Cun-Lara]: Yeah. I can read, write (Indiscernible).
>
> THE COURT: Are you having trouble understanding me today?
>
> [Cun-Lara]: No.

. . . .

>    THE COURT: I'm not going to ask you whether you are a U.S. citizen, but let me just ask you this. Do you understand that if you are not a U.S. citizen, your no contest plea could have consequences of deportation, exclusion from admission to the United States, or denial of naturalization? Do you understand that?
>
>    [Cun-Lara]: Yeah, I understand that.
>
>    [Attorney Castillo]: Excuse me, Your Honor.
>
>    THE COURT: Yes.
>
>    [Attorney Castillo]: Just for -- just for the record, I met with Mr. Cun-Lara at length yesterday, and regarding that topic we just went over, we did discuss it fully and I gave him full advice.
>
>    THE COURT: And I believe that's an important topic that we need to raise this morning.
>
>    [Attorney Castillo]: Yeah.
>
>    THE COURT: Okay. Mr. Cun-Lara, your attorney said he talked to you about the immigration issue yesterday.
>
>    [Cun-Lara]: Yeah, he did.
>
>    . . . .
>
>    THE COURT: Okay. And you understand that there is risk to you?
>
>    [Cun-Lara]: Yeah.

One part of the COP Transcript reveals an irregularity:

>    THE COURT: And do you understand that if you demand a trial, you would have the right to testify or not to testify? If you choose to testify, no one can prevent you from testifying, and if you choose not to testify, no one can force you to testify.
>
>    [Attorney Castillo]: Say yes.
>
>    [Cun-Lara]: Okay. Yes, I understand.

The Circuit Court found that Cun-Lara knowingly and voluntarily entered his plea of no contest to the charge that he violated HRS § 329-43.5(a) and accepted the plea.

On November 8, 2007, the Circuit Court conducted a hearing, in English, on Cun-Lara's sentencing and his pending motion to defer acceptance of the no-contest plea. At the hearing, Cun-Lara's motion was denied, and he was sentenced to

five years probation. During the hearing, Cun-Lara responded in English to questioning by the Circuit Court and made a statement to the court in English. Neither Cun-Lara nor Attorney Castillo requested an interpreter. That same day, the Circuit Court filed the Judgment of Conviction and Probation Sentence ("Judgment") and the Order Denying Motion for Deferred Acceptance of Nolo Contendre Plea.

On April 23, 2008, pursuant to an agreement between the parties, the State dismissed the remaining charges against Cun-Lara: Count 1, Unlawful Methamphetamine Trafficking; and Count 2, Promoting a Dangerous Drug in the Third Degree.

According to Cun-Lara's new counsel, Walter J. Rodby ("Attorney Rodby"), on August 5, 2009, the United States Department of Homeland Security ("DHS") issued a warrant for Cun-Lara's arrest pursuant to section 236 of the Immigration and Nationality Act.[6] Thereafter, on October 26, 2009, Cun-Lara filed a motion to withdraw his July 23, 2007 no-contest plea ("Motion to Withdraw Plea") under Rules 32(d) and 47, Hawai'i Rules of Penal Procedure ("HRPP").

Meanwhile, on November 9, 2009, Cun-Lara filed the Petition initiating the instant case in Special Proceeding-Prisoner No. 09-1-0008 ("S.P.P. case"). At that point, Cun-Lara was attempting to withdraw his no-contest plea in the criminal case, while at the same time trying to vacate the Judgment in the S.P.P. case. On January 5, 2010, however, Cun-Lara filed a Declaration In Lieu of an Affidavit Regarding the Withdrawal of Petition to Vacate, Set Aside, or Correct Judgment in the S.P.P. case, thereby withdrawing the Petition.

On February 18, 2010, the Circuit Court held a hearing on Cun-Lara's Motion to Withdraw Plea. Attorney Rodby informed the court that he would be withdrawing the Motion to Withdraw Plea, as it was untimely filed, and requested that the court

---

[6] Section 236 of the Immigration and Nationality Act, codified in 8 U.S.C. § 1226, gives the Attorney General of the United States ("Attorney General") the power to take into custody any alien who is deportable as a result of a conviction of an offense "relating to a controlled substance," as provided for in 8 U.S.C. § 1227(a)(2)(B) (2005). 8 U.S.C. § 1226(c)(1)(B) (2005).

reinstate Cun-Lara's Petition in the S.P.P. case. On February 23, 2010, Cun-Lara filed a Notice of Withdrawal of the Motion to Withdraw Plea. On March 3, 2010, the Circuit Court entered the Order Granting Oral Motion to Reinstate Petition to Vacate, Set Aside, or Correct Judgment in the S.P.P. case, thereby reinstating the Petition.

B.    Cun-Lara's Petition

In the Petition, Cun-Lara claimed that his no-contest plea was invalid because it was not entered in an intelligent, knowing, and voluntary manner. Specifically, Cun-Lara claimed that his no-contest plea was invalid because he was not provided with a Spanish interpreter at the Change-of-Plea Hearing. In addition, Cun-Lara contended that his plea was the product of ineffective assistance of counsel because, among other things, Attorney Castillo failed to explain the immigration consequences of Cun-Lara's no-contest plea and failed to request a Spanish interpreter.

In Exhibit "A" In Support of Petition for Post-Conviction Relief ("Exhibit 'A'"), Attorney Rodby explains that Cun-Lara was born and raised in Guatemala and was not a citizen of the United States. Counsel further contends that Cun-Lara "works with his hands for a living, [and] has an extremely limited understanding of the English language, much less the written English language." Despite explaining that Cun-Lara could understand rudimentary words and phrases, Attorney Rodby also states that Cun-Lara was "absolutely incapable of understanding the complexity of the language and documents utilized every day by our courts when accepting Defendant's pleas of guilty or no contest." According to counsel, Cun-Lara's inability to speak and understand the English language rendered the Change-of-Plea Hearing unfair.

Attorney Rodby further states in Exhibit "A" that he "does not believe that any type of colloquy was conducted regarding [Cun-Lara's] ability to speak English, or the waiver of [Cun-Lara's] right to a Spanish interpreter" during the Change-of-Plea Hearing. Counsel expresses the further belief that at

various points during the court's colloquy with Cun-Lara, Cun-Lara did not understand the nature of the proceedings and "rather than attempt to advise [Cun-Lara] of the court's inquiry, [Attorney] Castillo simply instructed [Cun-Lara] to answer the court's questions with a 'yes' or a 'no' answer."

Attorney Rodby contends that Cun-Lara expressed to Attorney Castillo that because he did not have an interpreter, did not understand the nature of the Change-of-Plea Hearing, and did not understand the full effect that a plea of no contest would have on his immigration status, he had numerous unanswered questions regarding his court case. According to Attorney Rodby, Attorney Castillo instructed Cun-Lara that Cun-Lara "did not need a Spanish interpreter and that questions to the judge would make the judge angry."

Attorney Rodby contends that Attorney Castillo did not properly advise Cun-Lara of the immigration consequences of his plea. Specifically, Attorney Rodby states in Exhibit "A" that "[Cun-Lara] reports that [Attorney Castillo] instructed him that a paraphernalia charge would not trigger immigration consequences." "If [Cun-Lara] was so advised," Exhibit "A" concludes, "his plea of no contest was invalid."

C.   Attorney Castillo's Declaration

In his declaration, filed on December 30, 2009, Attorney Castillo responds to the allegations in the Motion to Withdraw Plea ("Attorney Castillo's Declaration"). Attorney Castillo's Declaration was later made part of the record regarding Cun-Lara's Petition in the S.P.P. case. According to Attorney Castillo, Cun-Lara's wife is the daughter of a long-time personal and family friend, and an American citizen who speaks to her husband in English. Attorney Castillo states that it was important for him to establish Cun-Lara's understanding of English and, upon questioning, Attorney Castillo learned that Cun-Lara had lived on Kaua'i for more than ten years, was employed there, and that his employer instructed him in English.

Attorney Castillo states that he had discussions with both Cun-Lara and his wife, together and separately, at which

time he observed that Cun-Lara's understanding of English was sufficient without the aid of an interpreter. Nevertheless, he contends that he made sure that Cun-Lara understood their discussion. Attorney Castillo says that he specifically advised Cun-Lara to inform him immediately if he had any difficulty understanding what was being said and that Attorney Castillo would then obtain an interpreter.

Attorney Castillo relates that on July 26, 2006, the day that Cun-Lara was to waive his preliminary hearing, he met with Cun-Lara before and after the hearing to make sure that Cun-Lara understood the proceedings. Furthermore, Attorney Castillo states that he specifically told Cun-Lara that he should request assistance with translation if he had any difficulty understanding the proceedings. During the waiver of preliminary hearing, Attorney Castillo says, Cun-Lara did not express any difficulty in understanding the colloquy with the judge.

Attorney Castillo explained that he had several occasions between the waiver of preliminary hearing and the Change-of-Plea Hearing to talk with Cun-Lara in English, and that at no time did Cun-Lara exhibit any difficulty in speaking and understanding English. Attorney Castillo and Cun-Lara had a lengthy meeting two days before the Change-of-Plea Hearing during which they reviewed the facts of the case, the basis for Cun-Lara's change of plea, and each item on the No-Contest-Plea Form.

Attorney Castillo states that he clearly discussed item 10 on the No-Contest-Plea Form with Cun-Lara,[2] and takes special care to discuss immigration issues with clients because he knew that non-citizens resort to claiming no understanding of English and either blame the court or their defense attorneys when subsequently faced with a harsh sentence or deportation.

_____

[2]    Item 10 in the No-Contest-Plea Form states that:

I know that, if I am not a citizen of the United States, a conviction or a plea of guilty or no contest, whether acceptance of my plea is deferred or not, may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.

Attorney Castillo specifically contests Cun-Lara's allegations in paragraphs 16, 17, and 21 of the Motion to Withdraw Plea. Attorney Castillo states that he told Cun-Lara that if at any time during the proceedings he needed a translator or if he did not understand what was being said, Cun-Lara should let him know and he would "let the court know and ask for further explanation from the Court, or ask for time to discuss the matter further with Mr. Cun-Lara." Attorney Castillo states specifically, "I did not tell [Cun-Lara] that 'the judge would be angry if [Cun-Lara] asked questions.'"

Attorney Castillo explicitly denies instructing or assuring Cun-Lara that a paraphernalia conviction would not trigger immigration consequences. Rather, "I told him that he would be lucky if he was not deported for this offense."

In conclusion, Attorney Castillo notes that Cun-Lara did not express any difficulty understanding the Change-of-Plea Hearing. Attorney Castillo met with Cun-Lara after the hearing "to make sure that he understood the foregoing proceedings and to make sure that he understood the judge's instructions regarding meeting with the probation department." According to Attorney Castillo, Cun-Lara expressed his understanding and successfully carried out the judge's instructions regarding meeting with the probation department.

D.    Cun-Lara's Declaration

Approximately two and one-half months after submitting his Petition, and approximately one month after the filing of Attorney Castillo's Declaration, on January 28, 2010 Cun-Lara filed his Declaration In Lieu Of Affidavit Regarding Motion To Withdraw No Contest Plea ("Cun-Lara's Declaration"). Cun-Lara's Declaration was later made part of the record regarding his Petition in the S.P.P. case. In his declaration, Cun-Lara explains that he is "not able to speak and understand English fluently[,]" that English is a second language, and that he can only speak and understand English at an elementary level. The declaration was co-signed by a person identified as Cun-Lara's Spanish interpreter.

Cun-Lara further states that Attorney Castillo advised him "that it was possible that I would not be deported even though I plead [sic] no contest to the above referenced matter, and that it depended upon 'luck.'" Cun-Lara claims that he did not understand what a "Class C felony" was, the State's burden of proof, his right to testify or not testify, or the fact that his silence at trial could not be held against him. According to Cun-Lara, if he "understood the State's burden of proof, along with the fact that [he] did not have to testify, and that not testifying could not be held against [him, he] would not have entered a no contest plea" and "would have been more cautious about relying upon 'luck' to avoid deportation and/or removal from the United State's [sic] of America."

On March 31, 2010, in the S.P.P. case, Attorney Rodby and the State stipulated to the Circuit Court considering the COP Transcript, Attorney Castillo's Declaration and Cun-Lara's Declaration "as evidence . . . when rendering a decision as to whether Petitioner Cun-Lara should be granted a hearing on his request for post-conviction relief[.]" The Petition, which the Circuit Court deemed "patently frivolous and without a trace of support in the record," was denied without a hearing on May 4, 2010. Cun-Lara's appeal was timely filed.

II.   STANDARDS OF REVIEW

     Denial of HRPP Rule 40 Petition Without Evidentiary Hearing

> If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner. The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held during the course of the proceedings which led to the judgment or custody which is the subject of the petition or at any later proceeding.

Haw. R. Pen. P. 40(f) (2012).

     As HRPP Rule 40(f) applies to the trial court,

> [a]s a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as

> true the facts alleged would change the verdict[;] however,
> a petitioner's conclusions need not be regarded as true.
> Where examination of the record of the trial court
> proceedings indicates that the petitioner's allegations show
> no colorable claim, it is not error to deny the petition
> without a hearing.

*Barnett v. State*, 91 Hawai'i 20, 26, 979 P.2d 1046, 1052 (1999) (quoting *Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994)). If the trial court denies a HRPP Rule 40 petition without an evidentiary hearing and the petitioner appeals, "the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue" de novo. *Id.* (quoting *Dan*, 76 Hawai'i at 427, 879 P.2d at 532).

Knowing, Intelligent, and Voluntary No-Contest Plea

Whether a defendant knowingly, intelligently, and voluntarily entered his or her no-contest plea is reviewed de novo based upon an examination of the entire record. *State v. Topasna*, 94 Hawai'i 444, 452, 16 P.3d 849, 857 (App. 2000).

Ineffective Assistance of Counsel

> When reviewing a claim of ineffective assistance of
> counsel, [the appellate court] looks at whether defense
> counsel's assistance was within the range of competence
> demanded of attorneys in criminal cases. The defendant has
> the burden of establishing ineffective assistance of counsel
> and must meet the following two-part test: 1) that there
> were specific errors or omissions reflecting counsel's lack
> of skill, judgment, or diligence; and 2) that such errors or
> omissions resulted in either the withdrawal or substantial
> impairment of a potentially meritorious defense. To satisfy
> this second prong, the defendant needs to show a possible
> impairment, rather than a probable impairment, of a
> potentially meritorious defense. A defendant need not prove
> actual prejudice.

*State v. Wakisaka*, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (internal quotation marks, citations, and footnote omitted).

III. DISCUSSION

Cun-Lara contends that the Circuit Court erred in denying his Rule 40 Petition without a hearing. Specifically, he contends that his change of plea was not intelligent, knowing, and voluntary. In addition, he argues that he was denied effective assistance of counsel.

13

A.    Intelligent, Knowing, and Voluntary Change of Plea

1.    Attorney Castillo's Deportation-Related Advice

Cun-Lara argues that because a conviction for possessing drug paraphernalia would subject him to "automatic deportation," and because Attorney Castillo instead advised him that he "might get lucky and not be deported[,]" Attorney Castillo's representation was constitutionally ineffective.[8/]  We begin by examining counsel's obligation to provide effective assistance in the context of a non-citizen pleading guilty to a drug-related charge.

a.    *Padilla v. Kentucky*

Cun-Lara relies on *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473 (2010), to support his claim.  In *Padilla*, the defendant, a citizen of Honduras, pleaded guilty to transporting a large amount of marijuana.  *Id.* at __, 130 S. Ct. at 1477.  Padilla's crime, "like virtually every drug offense except for only the most insignificant marijuana offenses, [was] a

---

[8/]    Cun-Lara's characterization of Attorney Castillo's advice evolved over time.  At the Change-of-Plea Hearing, Cun-Lara delivered the No-Contest-Plea Form in which he said that he knew, "if I am not a citizen of the United States, a conviction or a plea of guilty or no contest, whether acceptance of my plea is deferred or not, may have the consequences of deportation."  In the colloquy between Cun-Lara and the court that same day, the court noted that Cun-Lara's attorney had said that he talked to Cun-Lara about the immigration issue, and Cun-Lara affirmed.  The Circuit Court then asked, "And you understand that there is risk to you?"  Cun-Lara responded, "Yeah."  In Exhibit "A", however, Attorney Rodby stated that "Petitioner reports that Mr. Castillo instructed him that a paraphernalia charge would not trigger immigration consequences."  Finally, in his own declaration, Cun-Lara states that "Mr. Castillo did advise me that it was possible that I would not be deported even though I plead [sic] no contest to the above referenced matter, and that it depended upon luck."  In his opening brief, Cun-Lara claims that Attorney Castillo told him that he "might get lucky and not be deported."

In light of the relative similarity between the first, second, fourth, and fifth characterizations offered above, and their similarity with Attorney Castillo's own statement ("I told him that he would be lucky if he was not deported for this offense"), we reject the characterization offered in Exhibit "A" and accept, for purposes of evaluating whether Cun-Lara has stated a colorable claim, that Attorney Castillo's advice was that "[Cun-Lara] would be lucky if he was not deported for this offense."  Even if we accepted the characterization of Attorney Castillo's advice offered in Cun-Lara's subsequent declaration, we view the statements as functionally equivalent, and it would, therefore, not change our analysis or conclusion.

deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i)."[9]  *Id.* at __, n.1, 130 S. Ct. at 1477 n.1.  Despite the fact that the guilty plea made his deportation "virtually mandatory," defense counsel told Padilla that he "did not have to worry about immigration status since he had been in the country so long." *Id.* at __, 130 S. Ct. at 1478 (quoting *Commonwealth v. Padilla*, 253 S.W.3d 482, 483 (Ky. 2008)) (internal quotation marks omitted).

Padilla claimed ineffective assistance of counsel, asserting that he would not have pleaded guilty but for the incorrect advice from his attorney.  *Id.*  The Supreme Court of Kentucky denied Padilla's claim for post-conviction relief, holding that the Sixth Amendment "does not protect a criminal defendant from erroneous advice about deportation . . . ."  *Id.*

The U.S. Supreme Court reversed, holding that advice regarding deportation is a proper subject of an ineffective assistance of counsel claim.  *Id.* at __, 130 S. Ct. at 1482.  The Court noted that

> [u]nder contemporary law, if a noncitizen has committed a removable offense after the 1996 effective date of these amendments, his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses. *See* 8 U.S.C. § 1229b.  Subject to limited exceptions, this discretionary relief is not available for an offense related to trafficking in a controlled substance.  *See* § 1101(a)(43)·(B); § 1228.

*Id.* at __, 130 S. Ct. at 1480 (footnote omitted).  And, the Court reasoned, although deportation is not a criminal sanction, it is a harsh penalty that almost inevitably flows from a conviction of a removable offense.  *See id.* at __, 130 S. Ct. at 1481-82.

---

[9]     Pursuant to 8 U.S.C. § 1227(a)(2)(B)(i):

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i) (2005).

Applying the federal test for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Court held that 8 U.S.C. § 1227(a)(2)(B)(i) clearly subjected Padilla to "presumptively mandatory" deportation and that defense counsel's advice was, therefore, incorrect. *Padilla*, ___ U.S. at __, 130 S. Ct. at 1483. The Court stated:

> In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. See 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"). Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.

*Id.* at __, 130 S. Ct. at 1483. In sum, Padilla's counsel's error was in not recognizing that Padilla's plea would "make him eligible for deportation," and advising him to the contrary "that his conviction would not result in his removal" from the country.

The Court recognized that "[i]mmigration law can be complex, and it is a legal specialty of its own." *Id.* The Court noted:

> There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. . . . *When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.*

*Id.* (emphasis added) (footnote omitted). The Supreme Court remanded for consideration of the prejudice prong under *Strickland*. *Padilla*, ___ U.S. at ___, 130 S.Ct. at 1487.

This case differs from *Padilla* in two important respects: the deportation consequence under the charge to which Cun-Lara pleaded guilty was not "truly clear," and Attorney Castillo advised Cun-Lara correctly that it was possible that he would be deported if he pleaded guilty.

> b.    The deportation consequences of Cun-Lara's plea were not "truly clear."

Cun-Lara pleaded no contest to one count of unlawful use of, or possession with intent to use, drug paraphernalia to pack, repack, store, contain, or conceal a controlled substance in violation of HRS § 329-43.5(a).  In *Padilla*, on the other hand, the defendant pleaded guilty to the transportation of a large amount of marijuana in his tractor-trailer.  *Id.* at ___, 130 S.Ct. at 1477.

Two immigration laws are implicated by Cun-Lara's plea and his subsequent arrest by DHS.  The first is the law addressed in *Padilla* which characterizes Cun-Lara's offense as "deportable."  8 U.S.C. § 1227(a)(2)(B)(i).  The second is the cancellation of removal statute, allowing the Attorney General to cancel a qualified alien's deportation.[10/]  8 U.S.C. § 1229b(a).

"*Padilla*'s crime, like virtually every drug offense except for only the most insignificant . . . offenses, is a deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i)." *Padilla*, __ U.S. at __, n.1, 130 S. Ct. at 1477, n.1.  Cun-Lara's conviction also fell under 8 U.S.C. § 1227(a)(2)(B)(i) because a

---

[10/]    8 U.S.C. § 1229b(a) provides that:

(a) Cancellation of removal for certain permanent residents

The Attorney General may cancel removal in the case of an alien who is admissible or deportable from the United States if the alien --

(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

(2) has resided in the United States continuously for 7 years after having been admitted in any status, and

(3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a) (2008).

violation of HRS § 329-43.5(a) "relat[es] to a controlled substance," and is therefore a "deportable" offense.[11/] 8 U.S.C. § 1227(a)(2)(B)(i). As such, Cun-Lara is subject to deportation. In light of 8 U.S.C. § 1229b(a), however, the consequences of his conviction, unlike those in *Padilla*, are not "truly clear."

Padilla was convicted of drug distribution, a drug-trafficking crime and an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(B).[12/] *Padilla*, ___ U.S. at ___, 130 S. Ct. at 1478, 1480. Because of the nature of his conviction, Padilla was not eligible for cancellation of removal under 8 U.S.C. 1229b, rendering his deportation "practically inevitable." *Id.* at ___, 130 S.Ct. at 1480; *Lopez v. Gonzales*, 549 U.S. 47, 50 (2006) (an aggravated felony has greater collateral effects than other felonies because, "for example, the Attorney General's discretion to cancel the removal of a person otherwise deportable does not reach a convict of an aggravated felony"); *see also McNeill v. United States,* No. A-11-CA-495 SS, 2012 WL 369471, at *4 n.2 (W.D. Tex. Feb. 2, 2012) (had defendant been able to meet the 5-year residence requirement, the fact would have made him eligible to seek cancellation of his removal, "and thus would have made a difference to his immigration status"); *Flores v.* State, 57 So. 3d 218, 220 n.4 (Fla. Dist. Ct. App. 2010) (distinguishing *Padilla* on grounds that conviction for possession of drug paraphernalia is not an aggravated felony); *People v. Cristache*, 907 N.Y.S.2d 833, 843 (N.Y. Crim. Ct. 2010) (distinguishing *Padilla* on the grounds that the defendant's convictions did not constitute an aggravated felony).

Exhibit "A" describes HRS § 329-43.5(a) as an "aggravated drug felony," but Cun-Lara provides no basis for the

---

[11/]    HRS § 329-43.5(a) "makes abundantly clear that an object is not drug paraphernalia unless it is in some way linked to drugs." *See Luu-Le v. Immigration & Naturalization Serv.*, 224 F.3d 911, 915 (9th Cir. 2000) (analyzing Arizona drug-paraphernalia statute); *see also* HAW. REV. STAT. § 329-1 (2010) (definition of "drug paraphernalia"); *Bermudez v. Holder*, 586 F.3d 1167, 1168-69 (9th Cir. 2009) (noting that HRS § 329-43.5(a) and the Arizona statute in *Luu-Le* are "materially identical").

[12/]    The Immigration and Nationality Act defines "aggravated felony" by a list that includes "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in § 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B).

characterization and does not address it in his brief. Although the term "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43)(B) as including "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)[,]" a conviction under HRS § 329-43.5(a) is not for "illicit trafficking in a controlled substance." *See* 21 U.S.C. § 863 (2000) (federal drug-paraphernalia offense prohibits the sale, offer to sell, import, or export of, or the use of the mails to transport, drug paraphernalia); *Lopez*, 549 U.S. at 53-54, 127 S. Ct. at 630 (2006) ("ordinarily 'trafficking' means some sort of commercial dealing"). *Compare* HAW. REV. STAT. § 329-1 (2010) (definition of "drug paraphernalia"), *with* 21 U.S.C. § 812 (schedules of controlled substances).

Furthermore, the simple use of, or possession with intent to use, drug paraphernalia is not a federal offense and, therefore, does not appear to be a drug trafficking crime as defined in 18 U.S.C. § 924(c). *See* 21 U.S.C. § 863 (federal drug-paraphernalia offense prohibits the sale, offer to sell, import, or export of, or the use of the mails to transport, drug paraphernalia); *see also Ramirez-Altramirano v. Holder*, 563 F.3d 800, 808 (9th Cir. 2009), overruled on other grounds by *Nunez-Reyes v. Holder*, 646 F.3d 684 (9th Cir. 2011) (no federal statute criminalizing possession of drug paraphernalia).

Cun-Lara's conviction under HRS § 329-43.5(a) does not appear to constitute an aggravated drug felony under 8 U.S.C. § 1101(a)(43)(B). Moreover, he had lived for more than ten years on Kaua'i, and does not claim to have not been lawfully admitted for permanent residence for at least five years. Consequently, Cun-Lara appears to remain eligible for cancellation of removal. The deportation consequences of his plea, therefore, were not "truly clear."

c.    Attorney Castillo's advice

The question then is whether Attorney Castillo sufficiently advised Cun-Lara of the potential deportation consequences associated with his plea. Our first task is to

determine what Attorney Castillo said to Cun-Lara.

In reviewing a claim that a Rule 40 Petition was denied without a hearing, we ordinarily accept as true the allegations contained in the petition and proceed from there to examine the record to determine whether the allegations show a colorable claim. *State v. Allen*, 7 Haw. App. 89, 92-93, 744 P.2d 789, 792-93 (1987). Here, however, we are confronted with a case where the facts as alleged in the Petition are disputed elsewhere in the record by the petitioner himself. *See*, *supra*, n.8. Based on our evaluation of the record, including Cun-Lara's own declaration, we accept as true for our purposes here Attorney Castillo's statement that he "told [Cun-Lara] that he would be lucky if he was not deported for this offense."

"When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, ___ U.S. at ___, 130 S. Ct. at 1483. Since we conclude above that the immigration consequences of Cun-Lara's guilty plea to a paraphernalia charge under HRS § 329-43.5(a) are not truly clear, it follows that Attorney Castillo's advice was sufficient. Advising Cun-Lara that he would be fortunate if he was not deported if he pleaded no contest constitutes a sufficient warning that pleading no contest "carr[ies] a risk of adverse immigration consequences."

Unlike the circumstances in *Padilla*, where the defense counsel erroneously told Padilla that he "did not have to worry about immigration status[,]" *id.* at ___, 130 S. Ct. at 1478 (internal quotation marks omitted), Attorney Castillo warned Cun-Lara that it was possible that he would be deported if he pleaded no contest. Although Cun-Lara attempts to characterize Attorney Castillo's reference to "luck" as encouragement for him to roll the dice, Attorney Castillo sufficiently warned Cun-Lara of the likely immigration consequence of his no-contest plea — removal from the United States. Therefore, Cun-Lara's claim that his no-contest plea was not knowingly, intelligently, and voluntarily given due to a lack of understanding of the deportation risks associated with pleading no contest to the drug-paraphernalia

charge is not colorable, and the Circuit Court did not err in denying this claim without a hearing.

2.    Interpreter

Cun-Lara argues that, because he was not provided a translator and because of the difficulty he had understanding English, he did not understand when the Circuit Court asked whether he understood his right to testify or not testify in his own defense, and only answered that he understood because Attorney Castillo told him:  "Say yes."  Cun-Lara argues that, as a result, his plea was not knowing, intelligent, and voluntary; he also claims that Attorney Castillo was ineffective for failing to request a translator.

"A waiver is the knowing, intelligent, and voluntary relinquishment of a known right."  *State v. Friedman*, 93 Hawaiʻi 63, 68, 996 P.2d 268, 273 (2000).  A defendant waives several constitutional rights when he pleads nolo contendre, including the privilege against compulsory self-incrimination.  *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  "[T]o determine whether a waiver was voluntarily and intelligently undertaken, this court will look to the totality of facts and circumstances of each particular case."  *Friedman*, 93 Hawaiʻi at 68-69, 996 P.2d at 273-74 (quoting *State v. Vares*, 71 Haw. 617, 621, 801 P.2d 555, 557-58 (1990)) (internal quotation marks omitted).  "[A]lthough no specific 'litany' or 'ritual' is required, the record on review must affirmatively show that the defendant's [no-contest] plea was voluntarily and understandingly given before the plea can be accepted."  *See State v. Vaitogi*, 59 Haw. 592, 598, 585 P.2d 1259, 1263 (1978).

"It is general law that where a defendant cannot understand and speak English, the judge is required to appoint an interpreter to aid a defendant."  *State v. Faafiti*, 54 Haw. 637, 638, 513 P.2d 697, 699 (1973).  However, "where a defendant has some knowledge of English and he is reasonably able to converse in English, it is within the discretionary power of the trial court whether to appoint or not to appoint an interpreter."  *Id.* at 639, 513 P.2d at 699.

The totality of the record plainly demonstrates that Cun-Lara sufficiently understood English and specifically, with a single unexplained exception which could have had to do with any number of possible reasons other than an inability to comprehend the language, understood the Circuit Court's questions. At the Change-of-Plea hearing, Cun-Lara told the Circuit Court that he was not having difficulty understanding its questions and that he could read and write in English. Cun-Lara answered the Court's questions during the plea colloquy with yes or no answers, depending on the question, and frequently responded with coherent, full sentences. Cun-Lara was capable of asking, and did ask, the Circuit Court a question regarding a future court appearance.

Cun-Lara informed the Circuit Court that he fully understood the proceeding. The COP Transcript establishes that Cun-Lara understood the questions that the Circuit Court asked him. *See Faafiti*, 54 Haw. at 639, 513 P.2d at 699–700 (looking at the transcript of defendant's testimony to determine whether the defendant "had sufficient command of the English language"); *accord People v. Osuna*, 436 N.W.2d 405, 407 (Mich. Ct. App. 1988) (rejecting claim that the case should be remanded for hearing on whether defendant was sufficiently fluent in English to knowingly waive his rights upon pleading guilty because "the transcript of the plea proceedings indicates that defendant had no problem communicating in English with the lower court").

Furthermore, a waiver of rights in a plea agreement signed by the defendant may cure deficiencies in the plea colloquy. *Cf. United States v. Gillen*, 449 F.3d 898, 904 (8th Cir. 2006) (signature on plea agreement and indication at the plea hearing that he read and understood the plea agreement renders Rule 11 variance, at most, only harmless error); *United States v. Hernandez*, No. 05-3227, 2006 WL 1476136, at *1 (7th Cir. May 26, 2006) ("the information omitted by the district court in its Rule 11 colloquy . . . would be harmless error because each of those warnings was outlined in [the defendant's] written plea agreement"). Here, the No-Contest-Plea Form, signed by Cun-Lara, states: "I understand I have the right to take the

stand to testify and I have the right not to testify at trial." The form states that Cun-Lara signed the form "after [he had] gone over all of it with [his] lawyer." At the Change-of-Plea Hearing, Cun-Lara confirmed that he reviewed the No-Contest-Plea Form with Attorney Castillo and that he did not have any questions because "[he] went over it with [Attorney Castillo] already." Cun-Lara told the court that no one forced him or put pressure on him to plead no contest.

Admittedly, Attorney Castillo's imperative statement in the COP Transcript — that Cun-Lara "[s]ay yes" to the Circuit Court's question — is highly irregular. This, however, does not overcome the entirety of the record, which clearly shows that Cun-Lara knowingly, intelligently, and voluntarily relinquished his right to testify or not testify in his own defense at trial. Because of Cun-Lara's sufficient understanding of the English language, as evidenced by the record, Cun-Lara cannot show that his plea was not knowing, intelligent, and voluntary.

B.    Ineffective Assistance of Counsel

As discussed above, Cun-Lara argues that his no-contest plea was not entered in an intelligent, knowing, and voluntary manner, in part, because, he contends, Attorney Castillo's deportation-related advice was ineffective. We concluded to the contrary, holding that Cun-Lara's plea was entered in an intelligent, knowing, and voluntary manner.

It is the defendant's burden to show that counsel was ineffective under a two-part test: "1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." *State v. Wakisaka*, 102 Hawai‘i 504, 514, 78 P.3d 317, 327 (2003) (quoting *State v. Aplaca*, 74 Haw. 54, 66-67, 837 P.2d 1298, 1305 (1992)) (internal quotation marks omitted). Nothing in the record indicates that Attorney Castillo's obligations extended any further than informing Cun-Lara that deportation was a possible consequence of his no-contest plea. Therefore, Cun-Lara did not state a colorable

claim of ineffective assistance of counsel, and the Circuit Court did not err when it denied the Petition without a hearing.

IV.  CONCLUSION

The May 4, 2010 Findings of Fact; Conclusions of Law; Order Denying Petitioner Isidro Oswaldo Cun-Lara's Rule 40, HRPP Petition for Post-Conviction Relief of the Circuit Court of the Fifth Circuit is affirmed.

On the briefs:

Walter J. Rodby,
for Petitioner-Appellant

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kaua'i,
for Respondent-Appellee